## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Shaquille Rashawn Williams,<br>    Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:16cv640 (TSE/MSN) |
| | ) | |
| Kristal Wallace and J. M. Conti,<br>    Defendants. | ) | |

<u>MEMORANDUM OPINION</u>

Shaquille Rashawn Williams, a Virginia inmate proceeding <u>pro se</u>, has filed a civil rights

action, pursuant to 42 U.S.C. § 1983, principally alleging that his Eighth Amendment rights were

violated by officials at the Virginia Beach Correctional Center ("VBCC"). Plaintiff has applied to

proceed <u>in forma pauperis</u> in the lawsuit. After careful review of plaintiff's complaint and the

attached exhibits, the claims against the defendants must be dismissed pursuant to 28 U.S.C. §

1915A(b)(1) for failure to state a claim.[1]

### I.

Plaintiff alleges that on March 16, 2016 he was moved to a different housing unit in

---

[1] Section 1915A provides:

    (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

    (b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
        (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
        (2) seeks monetary relief from a defendant who is immune from such relief.

VBCC. Without additional detail, he states that he was assaulted and his glasses were stolen in the new unit, and he was moved to a visitation room after he told officers that he feared for his life. Corporal Kristal Wallace came to see plaintiff and informed him that she believed he was block-shopping, and that he would be placed in B1st, a "reass" unit. Compl. at 5. Sgt. Conti then put plaintiff in handcuffs to escort him to the new unit, and on the way Conti and Wallace were "squeezing [plaintiff's] arms and hands violently which were handcuffed behind [his] back." Id. When plaintiff said they were hurting him Wallace told him to "stop bitching, man up," and plaintiff replied that Wallace and Conti were "nothing but [Sheriff] Ken Stolle's slaves." Id. Wallace then admonished plaintiff to "shut the fuck up" and stated that he was going to "the hole." Id. Conti "twisted [plaintiff's] arms violently all the way back," and plaintiff "began twisting and turning" and saying that they were hurting him although he was complying with them. Conti "tried to take [plaintiff] down to the ground" and Wallace punched him on the right side of his face with a closed fist. Id. Plaintiff at that point stated, "Wallace you a dead bitch for assaulting me in my face. I know how to find you." Compl., first unnumbered p. following 5. Plaintiff was taken to the ground and shackles were placed on his feet "due to [him] kicking [his] feet around," and he was placed in a cell alone. Id. Cpl. Wallace "took out a criminal street charge on" plaintiff for obstruction of justice and threatening her with bodily harm; that charge later was *nolle prosequi* at the request of the Virginia Beach Commonwealth Attorney's Office so the it could be re-filed as a felony, and plaintiff was served with an indictment on May 21, 2016. Id.

Plaintiff has attached several exhibits to the complaint. Among them is an Incident Summary prepared by Cpl. Wallace which reflects the following:

2

Inmate Williams was originally removed from B2F1 because he
feared for his life from the entire block. Inmate Williams described
a few inmates in the block, but could not list any names. After
review of inmate Williams's housing and classification history, it was
determined that inmate Williams was block-shopping, and it was
confirmed when I went to talk with him, and within the first couple
of sentences, he was asking to be returned to A3K so he wouldn't
have any more problems because they all got along. Inmate Williams
was going to be rehoused on B1st until he began to threaten Sergeant
Conti and I. Inmate Williams tried to break away from our control
and repeatedly threatened us as well as telling us to let go of him
because it hurt. Once on C3rd, inmate Williams had to be taken to
the ground because he began to kick and pull away. Once in C3F
CA318, inmate Williams was taken to the ground again. He again
began threatening the staff saying, "Just wait until I get out on the
street," "I only have 6 months left," "When I get out, I'm gonna kill
you all," "I gotta get out sometime," "I'll smoke all yall," and
"Wallace you a dead woman bitch, I know how to find you." Just to
name a few threats. When we left C3F, we were called back because
inmate Williams had tied a jumpsuit loosely around his neck and had
placed the mat against the door. Inmate Williams was removed from
CA318 and placed in CA319 via cell extraction and placed on suicide
precautions without further incident.

Compl., Att.3, Incident Summary 3/17/16. The report indicates plaintiff was sanctioned with 56

days restricted housing and 56 days suspended as a result of the incident.

The named defendants in this lawsuit are Cpl. Wallace and Sgt. Conti. Plaintiff asserts

three claims: (1) assault against Cpl. Wallace based upon her punch to his face; (2) excessive

force against both Sgt. Conti and Cpl. Wallace for violently and unnecessarily twisting his

handcuffed arms behind his back even though he was "completely complying;" and (3)

harassment against Cpl. Wallace for "continuing to pick with [him]." Compl., second

unnumbered p. following 5.[2] As relief, plaintiff seeks monetary damages and "to have [his] 8

_____

[2]The complaint also alleges that Cpl. Wallace searched plaintiff's cell on April 19, 2016 and
removed 3 legal pads and notebooks. Because Wallace had taken out a criminal charge against
plaintiff she "was to have no contact with" him, yet she went through plaintiff's "legal papers" and

years of probation reduced to 6 months to 1 years." Id.

## I.

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570  (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level...". Twombly, 550 U.S. at 55.

Courts may also consider exhibits attached to the complaint. United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing 5A Charles

---

"viewed documents that was pertaining to her and [plaintiff's ] defense and was not supposed to be viewed or touched by Wallace at all." Compl., first unnumbered  p. following 5.  No claim based on these facts is alleged.

A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990), cited with approval in Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). Moreover, where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." Gulf Ins. Co., 313 F. Supp. 2d. at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

### III.

Turning first to plaintiff's claim that defendants applied excessive force during the incident at issue, to state an Eighth Amendment claim an inmate must demonstrate that "'the prison official acted with a sufficiently culpable state of mind (subjective component) and ... the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).'" Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)).[3] To satisfy the objective component, the plaintiff must show that the "nature" or amount of force employed "was nontrivial." Wilkins v. Gaddy, 559 U.S. 34 (2010). The subjective component turns on whether the inmate can demonstrate "'wantonness in the infliction of pain.'" Iko, 535 F.3d at 239 (quoting Whitley v. Albers, 475 U.S. 312, 322 (1986)). The "core judicial inquiry" in making such a determination is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also, Whitley, 475 U.S. at 320-21. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... whether or not significant injury is evident."

[3]The Eighth Amendment standard is appropriately applied here because plaintiff is a state-responsible inmate rather than a pretrial detainee. See Compl., Att. 17, Inmate Request Form dated 4/29/16.

Hudson, 503 U.S. at 9. The extent of injury suffered by the inmate is relevant to the Eighth

Amendment inquiry, both because it may suggest whether the use of force could plausibly have

been thought necessary in a particular situation, Whitley, 475 U.S. at 321, and because it may

provide some indication of the amount of force applied. Wilkins, 130 S.Ct. at 1178. (rejecting

the notion that an excessive force claim involving only *de minimis* injury is subject to automatic

dismissal). Nonetheless, "[i]njury and force ... are only imperfectly correlated, and it is the latter

that ultimately counts." Id.. at 1178-79.

Satisfaction of the objective component in a successful Eighth Amendment claim is less

demanding relative to the subjective component. Williams, 77 F.3d at 761. Here, plaintiff

alleges that he suffered pain when defendants squeezed his arms and twisted the handcuffs he

was wearing, and that he has a scar on his face from a ring Cpl. Wallace was wearing when she

punched him. For purposes of this analysis , it will be assumed that these injuries when taken in

the light more favorable to the plaintiff were sufficiently serious to warrant constitutional

protection. Cf. Wilkins, 130 S.Ct. at 1179.

However, plaintiff's claim founders on the subjective component. Taking as true the

facts plaintiff relates in the complaint as well as those reflected in the attached exhibits, it is

apparent that defendants applied force to plaintiff in "a good-faith effort to maintain or restore

discipline." Hudson, 503 U.S. at 7. Plaintiff himself states in the complaint that as he was being

escorted to his new cell by the defendants, he was "twisting and turning" his arms, "kicking [his]

feet around," and repeatedly threatening the officers. In Cpl. Wallace's incident summary

plaintiff has attached to the complaint, she adds that as she and Sgt. Conti were escorting plaintiff

he "tried to break away from [their] control" and that they were forced to take him to the ground

6

"because he began to kick and pull away." Under these circumstances, the asserted facts indicate that defendants applied force to plaintiff in a good-faith effort to place him in his new cell.

Moreover, taking the asserted facts as true, there is no suggestion that the force was applied "maliciously and sadistically to cause harm." Hudson, 503 U.S. at 9. "One acts 'maliciously' by undertaking, without just cause or reason, a course of action intended to injure another; in contrast, one acts 'sadistically' by engaging in extreme or excessive cruelty or by delighting in cruelty." Cherry v. Sherin, 2012 WL 664203 (E.D. Va. Feb. 28, 2012), quoting Howard v. Barnett, 21 F.3d 868, 872 (8th Cir. 1994). The Supreme Court has identified a number of "factors to assist courts in assessing whether an officer has acted with wantonness." Iko, 535 F.3d at 239 (internal quotation marks omitted). These include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321.

Here, plaintiff admits that as defendants were escorting him to his cell, he was resisting the officers' efforts to control him, kicking his feet, and repeatedly threatening them. It thus is apparent that the application of some force was necessary. Whitley, 475 U.S. at 321. Under the circumstances plaintiff describes, the alleged facts that defendants squeezed his arms, twisted the handcuffs he was wearing, and struck him once in the face do not offend contemporary standards of decency. Instead, the quantum of force that was used does not suggest that either officer acted with wantonness. Iko, 535 F.3d at 239. Thus, taking all of plaintiff's allegations as true, he fails to state a claim that defendants violated the Eighth Amendment, and his claim of excessive force

is subject to dismissal pursuant to §1915A.

Where § 1983 claims which over a district court otherwise would have original jurisdiction are subject to dismissal, there remains no basis to exercise supplemental or pendant jurisdiction over state tort claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); White v. Ammar's, Inc., 1988 WL 1077 at *1 (4th Cir. 1988) ("Because there is no subject matter jurisdiction, White's additional claims regarding pendant jurisdiction were properly dismissed.") Accordingly, as plaintiff's § 1983 claim for excessive force must be dismissed for failure to state a claim, subject matter jurisdiction over plaintiff's tort claims for assault and harassment does not exist, and they will be dismissed pursuant to Fed. R. Civ. P. 12(h)(3).

### V. Conclusion

For the foregoing reasons, plaintiff's claim that the Eighth Amendment was violated by defendants' application of excessive force must be dismissed for failure to state a claim pursuant to §1915A. Plaintiff's claims for assault and harassment must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3). An appropriate Order and judgment shall issue.

Entered this _10th_ day of _November_ 2016.

Alexandria, Virginia

_/s/_
T. S. Ellis, III
United States District Judge

8